IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SPORTSWEAR COMPANY – S.p.A, | **UNDER SEAL** |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 1:22-CV-1051-JPB |
| airik, et al., | |
| Defendants. | |

## TEMPORARY RESTRAINING ORDER, ASSET FREEZE ORDER AND ORDER TO SHOW CAUSE

THIS CAUSE is before the Court on Plaintiff Sportswear Company –

S.p.A.'s ("Plaintiff") Motion for Ex Parte Temporary Restraining Order, Asset

Freeze Order and Order to Show Cause ("Motion for TRO") [Doc. 3] against

Defendants airik, et al. ("Defendants," named in the attached Exhibit A), pursuant

to 15 U.S.C. § 1116,  Rule 65 of the Federal Rules of Civil Procedure and Local

Rule 65 of the Local Rules of the United States District Court for the Northern

District of Georgia for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114

and 1125(a).  As discussed below, Plaintiff has satisfied the requirements for the

issuance of an ex parte temporary restraining order and the additional relief

requested.

## I.   APPLICABLE LEGAL STANDARDS

A court will issue a temporary restraining order where the requesting party demonstrates the following four factors:  (1) it has a substantial likelihood of success on the merits; (2) the moving party will suffer irreparable injury if the order is not granted; (3) the threatened injury to the plaintiff outweighs the harm the relief would inflict on the non-movant; and (4) entry of the order would serve the public interest.  Schiavo ex. rel Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005); Cathedral Art Metal Co. v. Divinity Boutique, LLC, No. 1:18-CV-141, 2018 WL 566510, at *4 (N.D. Ga. Jan. 26, 2018) (applying the four-part test and granting a preliminary injunction in a Lanham Act case).

Courts may issue a temporary restraining order without notice to the adverse party where the facts in an affidavit demonstrate the moving party will suffer immediate and irreparable injury, loss or damage before the adverse party can be heard in opposition, and the movant's attorney certifies in writing why notice should not be required.  Fed. R. Civ. P. 65(b)(1).  Where a defendant's identity is known and notice can be feasibly given, the court may still grant an ex parte seizure order if providing notice to the defendant would "render fruitless the further prosecution of the action."  AT&T Broadband v. Tech Commc'ns, Inc., 381 F.3d 1309, 1319 (11th Cir. 2004) (quoting In re Vuitton et Fils, S.A., 606 F.2d 1, 5

(2d Cir. 1979)).  "The weight of authority around the country appears to favor the granting of *ex parte* seizure orders in trademark counterfeiting cases, where fake versions of well-known brands are deliberately passed off to the public as the genuine article."  Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen, 548 F. Supp. 248, 249 (S.D. Fla. 1982).  The justification for an ex parte seizure order is even more compelling where a significant amount of evidence pertaining to the counterfeiting activity is in electronic form and therefore subject to quick, easy and untraceable destruction by the defendants.  Dell Inc. v. BelgiumDomains, LLC, No. Civ. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007); see also Chanel, Inc. v. chanel255.org, No. 12-21762-CIV, 2012 WL 12845630, at *5 (S.D. Fla. May 17, 2012).

A request for permanent injunctive relief and disgorgement of Defendants' profits from counterfeiting pursuant to 15 U.S.C. § 1117 as well as a request for an award of attorney's fees are requests for relief in equity.  Requests for equitable relief invoke the court's inherent equitable powers to order preliminary injunctive relief, including an asset freeze, to assure the availability of permanent relief.  Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 987 (11th Cir. 1995). Such asset freezes are particularly appropriate against sellers of counterfeit goods who are likely to hide their ill-gotten profits if their assets are not seized.  Reebok

<u>Int'l, Ltd. v. Marnatech Enters., Inc.</u>, 970 F.2d 552, 559 (9th Cir. 1992).

## II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court, having reviewed Plaintiff's Motion, Memorandum and supporting declarations and evidence, makes the following findings of facts and conclusions of law:

### A.  Plaintiff's Trademarks

1) Plaintiff manufactures and distributes premium men's and junior's luxury sportswear garments and accessories, including but not limited to outerwear, knitwear, shirts, pants, footwear and bags under the well-known STONE ISLAND trademarks.

2) Plaintiff has adopted, used and/or registered several trademarks in connection with its products, including the following ("Plaintiff's Marks"):

| Mark | U.S. Federal Reg. Nos. |
|---|---|
| STONE ISLAND | 2706733 |
|  | 4500017 |
|  | 1370214 |

| Mark | U.S. Federal Reg. Nos. |
| --- | --- |
|  | 3707866<br>3496280 |
|  | 3520867 |
|  | 5706359 |
|  | 5958392 |

**B.  Defendants' Advertising and Sale of Counterfeit and Infringing Goods**

3) Defendants are foreign distributors and resellers of a variety of goods.
Defendants advertise and sell their goods through online marketplaces such as
Alibaba, AliExpress, DH Gate, Amazon, eBay, Joom and/or Wish
("Marketplaces").

4) Defendants offer to sell and offer to ship their goods to buyers located in
the United States, including in this judicial district.

5) Defendants accept payment for their goods in U.S. dollars through a

variety of U.S.-based payment processors and financial institutions, including

AliPay, DHPay, PayPal and ContextLogic ("Financial Institutions").

6) Plaintiff has demonstrated that it is likely that the evidence will show

Defendants are advertising and offering for sale goods using or bearing counterfeit

copies of at least one of Plaintiff's Marks, are using a counterfeit of at least one of

Plaintiff's Marks in their listings for non-genuine copies of Plaintiff's goods or are

using a confusingly similar trademark to one of Plaintiff's Marks in the marketing

and sale of their goods ("Counterfeit Products") through their virtual storefront(s)

on the Marketplaces.

7) Defendants have sold and shipped, and/or are willing to sell and ship,

Counterfeit Products to customers in the United States, including in this judicial

district.

8) Defendants are subject to the personal jurisdiction of this Court pursuant

to Fed. R. Civ. P. 4(k)(2), and exercising jurisdiction over Defendants is consistent

with the United States Constitution and its laws.  Based on the facts set forth

above, it is reasonable for Defendants to expect that they may be sued in the

United States.  SEC v. Carrillo, 115 F.3d 1540, 1542–47 (11th Cir. 1997) (holding

that the court had personal jurisdiction over a foreign corporation where the

defendant placed ads for securities in two airlines' in-flight magazines, mailed

offering materials directly to U.S. investors and maintained U.S. bank accounts to receive payment from investors); <u>Louis Vuitton Malletier, S.A. v. Mosseri</u>, 736 F.3d 1339, 1355–58 (11th Cir. 2013) (affirming jurisdiction over non-resident who sold counterfeit products through fully-interactive website).

9) Plaintiff has demonstrated that after a reasonable opportunity for further investigation and discovery, it is likely that the evidence will show that Defendants obtain the Counterfeit Products from the same manufacturers, share building space and/or personnel with manufacturers and are directly related to the manufacturers and/or each other and therefore form a chain of distribution of these Counterfeit Products. All parties to a chain of distribution of counterfeit products are jointly liable. <u>Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.</u>, 647 F.2d 200, 207 (D.C. Cir. 1981) (stating that in "copyright infringement cases, any member of the distribution chain can be sued as an alleged joint tortfeasor"); <u>BRS, Inc. v. Volume Shoe Corp.</u>, No. C81-1281A, 1982 WL 52210, at *7 (N.D. Ga. June 28, 1982). Thus, such evidence would make joinder of Defendants appropriate under Fed. R. Civ. P. 20(a)(2).

10) Plaintiff has never authorized Defendants to use any of Plaintiff's Marks in the advertising, promotion or sale of any goods in the United States.

11) Plaintiff has established that the Counterfeit Products offered for sale

7

by Defendants are not genuine and that Defendants are using one or more of Plaintiff's Marks on or in connection with the advertising and promotion of their Counterfeit Products.

12)    Plaintiff has established that it is substantially likely to succeed on the merits of its trademark infringement claims:

a)    Plaintiff owns valid federal trademark registrations for Plaintiff's Marks;

b)    The Counterfeit Products that Defendants are advertising and offering for sale are not genuine;

c)    Defendants are using spurious marks that are identical with, or substantially indistinguishable from, one or more of Plaintiff's Marks in commerce on or in connection with the advertising, offering for sale and/or sale of the Counterfeit Products; and

d)    This use of Plaintiff's Marks on or in connection with the advertising and sale of Counterfeit Products is likely to cause consumer confusion, mistake or deception as to the source or origin of the Counterfeit Products.

13)    Plaintiff has shown that it is likely to suffer irreparable harm if an injunction does not issue.  The Counterfeit Products are of inferior quality to

Plaintiff's genuine goods, misleading consumers as to the true quality of Plaintiff's products and causing consumer confusion, mistake and deception, all to the detriment of Plaintiff's goodwill.  The continued sale of the Counterfeit Products threatens Plaintiff with the loss of control over its reputation and loss of the considerable goodwill it has established with customers.  Moreover, Plaintiff has established that Counterfeit Products typically do not meet applicable product safety or labeling requirements.  This is more than sufficient to establish a likelihood of irreparable harm.  Ferrellgas Partners, L.P. v. Barrow, 143 F. App'x 180, 190–91 (11th Cir. 2005) ("'[T]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control and nature and quality of the defendants' goods.'" (alteration in original) (quoting Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc., 846 F.2d 1079, 1092 (7th Cir. 1998))); Crossfit, Inc. v. Quinnie, 232 F. Supp. 3d 1295, 1316 (N.D. Ga. 2017).

14)    It is likely that Plaintiff and consumers who purchase Defendants' Counterfeit Products will suffer immediate and irreparable loss, damage or injury unless Plaintiff's request for ex parte relief is granted:

a)    It is likely that Defendants will continue to sell counterfeit and infringing goods through their e-commerce Marketplace storefronts in the absence of the requested TRO;

     b)     As a result, it is likely that consumers will continue to be misled, confused and disappointed by the quality of these products, thereby significantly and irreparably damaging Plaintiff's valuable goodwill; and

     c)     Finally, Plaintiff will continue to suffer lost sales of genuine products as the result of the lower-cost Counterfeit Products offered for sale by Defendants.

15)     The balance of harms favors Plaintiff. If Plaintiff is required to provide Defendants notice of the Application for TRO or if the TRO is denied, Defendants will be able to shut down their Marketplace storefronts, transfer their ill-gotten gains away from the Marketplaces and otherwise take steps to hide their infringing conduct and prevent Plaintiff from obtaining meaningful relief. In contrast, if the Court grants the requested ex parte TRO, Defendants will be prohibited from continuing to advertise, offer for sale and sell Counterfeit Products to consumers in the United States and may be required to disgorge their ill-gotten gains from the past sale of such Counterfeit Products, neither of which constitutes any substantial harm.

16)     Plaintiff has further demonstrated that this TRO should be granted ex parte to avoid giving Defendants an opportunity to destroy relevant evidence,

much of which is in electronic form.  If Plaintiff gives Defendants notice of its

Application for TRO, Defendants are likely to delete their existing online e-

commerce Marketplace storefronts, transfer any ill-gotten gains away from the

Marketplaces and otherwise hide their identities, cover up evidence of their

infringing activities and shield their ill-gotten assets in an effort to avoid liability

and prevent Plaintiff from achieving a meaningful recovery, including financial

compensation and permanent injunctive relief.  Foreign parties that sell Counterfeit

Products often "disappear" when notified that their conduct is unlawful, only to set

up a new online storefront under a new identity, with new financial accounts.

17)    Granting Plaintiff an ex parte TRO will also be in the public's interest.

It will remove from the stream of commerce counterfeit and infringing goods that

do not meet Plaintiff's quality control requirements, thereby preventing further

consumer confusion, mistake or deception.

18)    Plaintiff has requested a permanent injunction and recovery of

Defendants' ill-gotten profits from their sale of Counterfeit Products pursuant to 15

U.S.C. § 1117(a).

19)    By requesting equitable relief, Plaintiff has invoked this Court's

inherent equitable powers to order preliminary relief, including an asset freeze, in

order to assure the availability of permanent relief.  Levi Strauss & Co., 51 F.3d at

987.

20)     Defendants are likely to destroy evidence of their counterfeiting

activities—including their electronic storefronts, payment histories and accounts

with financial institutions—or hide or transfer any ill-gotten proceeds from the sale

of Counterfeit Products outside of the jurisdiction of this Court, unless those assets

are frozen or otherwise restrained.

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** that

Plaintiff's Application for Temporary Restraining Order is **GRANTED** as follows:

1)     Each Defendant (as reflected on the attached Exhibit A), its officers,

directors, employees, agents, subsidiaries, distributors and all persons in active

concert or participation with any Defendant having notice of this Order are hereby

ordered to temporarily:

a)     Cease or refrain from manufacturing, advertising, offering for

sale, selling, distributing, destroying, selling off, transferring or

otherwise disposing of any Counterfeit Products;

b)     Cease or refrain from manufacturing, advertising, offering to

sell, selling, reproducing or distributing any products bearing

Plaintiff's Marks or any confusingly similar trademarks, other

than genuine products manufactured or distributed by Plaintiff

or its authorized manufacturers and distributors; and

c)    Cease or refrain from destroying, selling off, transferring or otherwise disposing of any documents, electronically stored information or financial records or assets of any kind, relating to the manufacture, importation, sale, offer for sale, distribution or transfer of any Counterfeit Products;

d)    Cease or refrain from using Plaintiff's Marks, or any confusingly similar trademarks, on or in connection with any virtual storefront that Defendants may own, operate or control on any Marketplace;

e)    Cease or refrain from any and all use of Plaintiff's Marks, or any confusingly similar trademarks, as metatags on any webpage (including the title of any web page), in any advertising links to other websites, from search engines' databases or cache memory and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to virtual storefronts registered by, owned by or operated by Defendants on any Marketplace; and

f)    Cease or refrain from altering, disabling, closing or transferring

ownership of any virtual storefront on any Marketplace during the pendency of this Action, or until further order of the Court.

2) For the duration of this suit, each Defendant must preserve all documents and electronically stored information arising from or related to its sale, offering for sale, advertising or promotion of Counterfeit Products through its virtual storefronts located on the Marketplaces.

3) All financial institutions, payment processors, banks, escrow services, money transmitters and Marketplaces, including but not limited to: PayPal, Inc. ("PayPal"); Ant Financial Services Group d/b/a AliPay and AliPay US, Inc.("AliPay"); DHPay Inc. ("DHPay"); Camel FinTech, Inc. ("Camel FinTech"); ContextLogic, Inc. ("ContextLogic"); or any other companies that engage or have engaged in the processing or transfer of money of or on behalf of any Defendants by virtue of their operation of virtual storefronts on any of the Marketplaces; and their related companies and affiliates who receive actual notice of this Order  shall:

    a)    Immediately attach and freeze all funds in any accounts owned, controlled or utilized by, or associated with Defendants, or otherwise prohibit the transfer of any funds out of any such accounts, and divert any frozen funds and any additional funds

that may be transferred into the accounts into a holding account for the trust of the Court, with such frozen funds and/or holding accounts being held, maintained and/or located exclusively within the United States.

4) Within seven days of receiving actual notice of this Order, all Marketplaces and Financial Institutions and their related companies and affiliates shall provide a report to Plaintiff for each Defendant having any account with the Marketplace or Financial Institution, the report to include, at minimum, the following:

a)   Legal name, email address and physical address of each Defendant;

b)   Current account balances and amount of funds attached, frozen and being held in trust pursuant to this Order; and

c)   Identity of all accounts linked to or associated with each of Defendants' accounts, or from or to which funds have been transferred from the attached accounts, including the name of the financial institution, account numbers, routing numbers or beneficiary institutions.

5) No funds restrained by this Order shall be transferred or surrendered by any Financial Institution or Marketplace for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of the Court.

6)  Upon receipt of notice of this Order, each Marketplace (including, but not limited to, Alibaba, AliExpress, DH Gate, Amazon, Wish, eBay, Joom or any other platform hosting virtual storefronts for any Defendants) at which a Defendant maintains a storefront or account is ordered to immediately:

   a)   Provide to Plaintiff the name, email address and physical address of each Defendant having an account or store with the platform;

   b)   Freeze all funds held or received by the Marketplace for Defendants' benefit; and

   c)   Disable the Marketplace storefront or account associated with each Defendant and cease providing any services to Defendants.

7) Plaintiff may notify the Marketplaces and Financial Institutions of this Order by electronic means, including by electronic mail with delivery confirmation.

8) This Order shall apply to Defendants, associated e-commerce Marketplace storefronts and any other websites, domain names, seller identification names, e-commerce stores or Financial Institution accounts which are being used by Defendants for the purpose of advertising, offering for sale and selling any of the Counterfeit Products at issue in this action and/or unfairly competing with Plaintiff.

9) Any Defendant or Financial Institution account holder may petition the Court to modify the asset restraint set out in this Order.

10)    A hearing by video conference is set before this Court, technical details to follow, on **March 31, 2022, at 3:30 PM**, at which time Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same, shall provide a reasonable estimate of their potential lost sales with supporting documentation and requested bond amount and shall appear and show cause why a preliminary injunction should not issue, at which time the Court will hear argument on Plaintiff's requested preliminary injunction.

11)    **<u>SERVICE BY ALTERNATE MEANS</u>:**  After Plaintiff's counsel has received confirmation that the Financial Institutions have restrained Defendants' funds as directed herein, Plaintiff shall serve copies of the Complaint,

17

Application for Temporary Restraining Order and this Temporary Restraining
Order on each Defendant as follows:

    a)    Attached to a message sent to Defendants through a
Marketplace messaging system where possible;

    b)    As a download link sent to Defendants through a Marketplace
messaging system; or

    c)    By electronic mail with delivery confirmation using email
addresses provided by the Marketplaces, Financial Institutions
or Defendants themselves.

12)    Additionally, for the purpose of providing additional notice of this
proceeding and all other pleadings, orders and documents filed herein, the owners
or operators of the Marketplaces and Financial Institutions, including related
entities and/or financial institutions, payment processors, bank, escrow services
and/or money transmitters, shall, at Plaintiff's request, provide Plaintiff's counsel
with all names, physical addresses, phone numbers and electronic mail address
associated with Defendants.

13)    Any response or opposition to Plaintiff's Motion for Preliminary
Injunction must be filed and served on Plaintiff's counsel by **March 28, 2022**, and
filed with the Court, along with Proof of Service.  Plaintiff shall file any reply

memorandum prior to the hearing set for **March 31, 2022**.  The above dates may be revised upon stipulation by all parties and approval of this Court.  **Defendants are on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d), Federal Rule of Civil Procedure 65, 28 U.S.C. § 1651(a) and the Court's inherent authority**.

14)   Plaintiff is ordered to remit a bond in the amount of $10,000 within seven days of this Order.

This Temporary Restraining Order expires within fourteen days unless extended for good cause.

   **SO ORDERED** this 21st day of March, 2022.

_____
**J. P. BOULEE**
United States District Judge

# EXHIBIT A

## LIST OF ALL NAMED DEFENDANTS SUBJECT TO ORDER

airik

aixdhbuyct

america123

ao10dhgatebuy

aoqdcbu518

apple-898

apprelzjt

bangtou

banxinbanyi

bbb001

bbb559

bbb0808

belief333

benjia

biao5188

blueblueshoes

bmwcar

brand000

buydhgatett

buyminist

championtop

chengcheng21

chinacpcompany8

chinan kaiqinyang

chinanewtrends1

choxxxcomb

cl555

clothing1989

coach-bag168

dandelionl6

designerclothing168

designerjuliashoes

dhfuzhuang

dhgatelz

dhgatenyt

dhgatety

dhgatewang

dhgatexy

dhgatezimenbuy

dhgatop

dhnetyma

dhngcbuygate

diudiuni

djl82

dmipower

ebey1113

edg0012

ertongjie601

famousbrand2

Fashion ACC

fashion_hoodies886

fashioncity111

fashioncxfcloth

fashionmenclothing88

fashiontotes1588

feng19890104

fenghua001

fmlcbhfs568

gaoman

ggg669

gongxiaodian

good_shop111

goodoy

hamburgersdogs

happy0525

heysery

hiphopboy

ho_discount_shop

home713

hot_sale_store

htb520

huacai12

huanggua55

hunag073511

imenbuydhtiat

inikey

iyeezy700

jack1012

jay0112

jiading

jiqiao

jmmake88

joe_biden_

junyuechaopai

Juventus Lee

jys001

keshbi

kingofthesky

kk241010

lemon_sports01

li8610

liancheng02

lilei229

lishuanglai001

liverpool01

llvv1688

longqiaoys

loveubaby

lqf7688

lqh6288

lqp88688

lsoikbvzqc335

Luxury BurberrY

lv0612

lv0717

lvchuan

m183001

maidou666

meat3package

meiyi01

men_apparel

mengyang04

mens_designerclothes

mizon998

monclair jacket

morangbuydhtr

mothervictory

mwl826

nanproduct

nanxian01

newdesigner03

nicorapolo

ningyanwen721

okshoes1

oppo1988

ourlove_88

pamashoes

performancepelse

PLAY designers t shirt

populars09

premiumcollection

q193919152

qdpj123

qieerxi

qinminjie401

relatives95

rose500

royech668

rui1111

shagua55

shoppeok

skoqi

skylinlin

songzhen001

spicy_crab
Stone Island Man
stone_002
stone_ee666
stone_fog
stonefashionista
stoneisland88
StoneIsland888
stoneislandmoncler
streetdress
sup166
tanhua77
teenagermaledear
thecolour
themostbeautiful
tianjiaqiang123
tjq306
tophoodie
Topstone island cp
tracksuitss
trading7888
trendofthelv
tshirtlv33
tudou12
unrestrained99
uruobuydhtf
vuition
vvipsellers
wangguihang2
wangxinghuar
wfc102030
whl719
wogua55
wulin001
wwwxx777
xiaoke999
xiazhi11
xintongtong

xyfz4
xyluxurious02
xyluxurious08
y2018whyc
yayabb
yongyuanxingyun1
yunliwuli801
yy54
zaijia
zhang921019
zhaoxi77
zheng_costumes
zhizhi001
zibodhbuytr
zjj111
zjj222
zjj333
zjj444
zjj777
zjj888
zjj999
zjj66666
zjy105
zlzhwe68